IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL O'CALLAGHAN,                          3:12-CV-00201-BR

       Plaintiff,                         OPINION AND ORDER

v.

CITY OF PORTLAND; MULTNOMAH
COUNTY SHERIFF; WESTSIDE
COMMUNITY COURT; CITY OF
PORTLAND HEARINGS OFFICER
GREGORY FRANK; DIRECTOR KURT
NELSON, CITY PARKS; MARK
PALMITER, PORTLAND POLICE
OFFICER JOHN DOE,

       Defendants.


MICHAEL O'CALLAGHAN
P.O. Box 3321
Portland, OR 97208
(503)960-3787

       Plaintiff, *Pro Se*

JAMES H. VAN DYKE

1 - OPINION AND ORDER

City Attorney
**JAMES G. RICE**
Deputy City Attorney
City of Portland
1221 S.W. Fourth Avenue
Room 430
Portland, OR 97204
(503) 823-4047

   Attorneys for Defendants City of Portland, Kurt Nelson,
   Gregory Frank, and Mark Palmiter


**BROWN, Judge.**

  This matter comes before the Court on Plaintiff's Motion

(#110) to Declare PCC 14 A.50.020 Unconstitutional.

  For the reasons that follow, the Court **DENIES** Plaintiff's

Motion.


<u>**BACKGROUND**</u>

  On February 3, 2012, Plaintiff Michael O'Callaghan filed a

*pro se* Complaint pursuant to 42 U.S.C. § 1983 against the City of

Portland, the Multnomah County Sheriff, Westside Community Court,

Judge Evans, Judge Blank, Gregory Frank, Kurt Nelson, Portland

Police Officer Palmiter, and three John Doe Portland police

officers.  Plaintiff's Complaint consisted of a lengthy narration

of numerous contacts that Plaintiff had with Portland police

officers and various legal proceedings from May 2009 through

December 2011.  Plaintiff did not identify the specific state or

federal laws or provisions of the United States Constitution that

2 - OPINION AND ORDER

Defendants allegedly violated.

On June 8, 2012, Judges Evans and Blank filed a Motion to Dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

On June 12, 2012, Defendant Multnomah County Sheriff filed a Motion to Dismiss Plaintiff's claims against him.

On January 16, 2013, the Court issued an Opinion and Order granting the Motion to Dismiss of Judge Steve Evans and Judge Harold Blank and dismissing those claims with prejudice on the ground that there is not a plausible basis on which Plaintiff might replead the claims.  The Court also granted Multnomah County Sheriff's Motion to Dismiss on the grounds that (1) to the extent that Plaintiff sought to allege state-law claims against the Multnomah County Sheriff, Plaintiff failed to allege that he provided timely notice as required by the Oregon Tort Claims Act (OTCA); (2) to the extent that Plaintiff alleged state-law claims against the Multnomah County Sheriff, the proper Defendant would have been Multnomah County; and (3) Plaintiff failed in his Complaint to set out any factual allegations specifically related to the Multnomah County Sheriff.  The Court granted Plaintiff leave to file an amended complaint to cure the deficiencies as to his claims against the Multnomah County Sheriff.

On February 6, 2013, Plaintiff filed a Motion to Amend, which was a narrative of assorted allegations against "parks

employees," unnamed Multnomah County Sheriff's deputies, Portland City Parks Director Kurt Nelson, and "PPB Palmiter."  Plaintiff asserted (1) various Notices of Compliance allegedly issued to Plaintiff constituted bills of attainder; (2) Plaintiff was deprived of property in violation of his right to due process; and (3) the Westside Community Court "is nothing more than a free slave system for the Portland business alliance to clean up downtown & the Pearl [and] it preys on the homeless for livability crimes with no authority of law, in secret."

On February 27, 2013, the Court construed Plaintiff's Motion to Amend as Plaintiff's Amended Complaint.

On March 13, 2013, the Multnomah County Sheriff filed a Motion to Dismiss Plaintiff's claims against him on the grounds that Plaintiff failed to provide him with Tort Claim Notice within 180 days of Plaintiff's alleged injury and Plaintiff failed to allege specific facts that state a claim against him.

On July 11, 2013, the Court issued an Opinion and Order in which it granted the Multnomah County Sheriff's Motion to Dismiss.  The Court noted it had previously advised Plaintiff as to the notice requirement of the OTCA, but Plaintiff again failed to allege that he provided the Multnomah County Sheriff with notice as required.  The Court, therefore, dismissed Plaintiff's state-law claims against the Multnomah County Sheriff without leave to replead.  The Court also noted Plaintiff's Amended

Complaint did not contain any factual allegations specifically related to acts of the Multnomah County Sheriff with respect to Plaintiff's claims for violation of his rights under the Fourth and Fifth Amendments and/or 42 U.S.C. § 1981.  Plaintiff, however, alleged in his Response to the Multnomah County Sheriff's Motion to Dismiss that on February 7, 2011, unnamed Deputy Sheriffs "directed a work crew to destroy the plaintiffs [*sic*] home and all its contents" and jailed Plaintiff without due process in violation of his rights under the Fourth and Fifth Amendments to the United States Constitution and possibly in violation of § 1981.  Nevertheless, Plaintiff did not set out with particularity in his Amended Complaint that such acts were directed or conducted by Multnomah County Sheriff's Deputies. The Court, therefore, permitted Plaintiff to file a Second Amended Complaint on the grounds that Plaintiff is proceeding *pro se* and might be able to state a claim with the direction provided by the Court in its July 11, 2013, Opinion and Order.  The Court, however, noted in its Order that it was permitting Plaintiff to file a Second Amended Complaint

> for the sole purpose of amending his allegations and claims against Multnomah County for violation of his rights under the Fourth and Fifth Amendments and/or § 1981 arising from the alleged actions by Multnomah County Sheriff's Deputies on February 2, 2011.  Plaintiff is not permitted to add further claims, facts, or allegations to his Second Amended Complaint against Multnomah County beyond those enumerated above.  If Plaintiff adds additional claims or allegations against Multnomah

5 - OPINION AND ORDER

County in his Second Amended Complaint, those
claims and allegations will be stricken and the
Court will not consider them.

On July 23, 2013, Plaintiff filed a Second Amended Complaint
in which he alleges the Multnomah County Sheriff, Officer
Palmiter, and Kurt Nelson violated his rights under the Fourth
and Fifth Amendments to the United States Constitution.

On August 12, 2013, the Multnomah County Sheriff filed a
Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant
to FRCP 12(b)(1) and (6).

On October 21, 2013, Plaintiff filed a Motion to Vacate
Sentence and Judgment.  Also on October 21, 2013, Plaintiff filed
a Motion to Declare PCC 14 A.50.020 Unconstitutional.

On October 29, 2013, the Court issued an Opinion and Order
in which it granted Multnomah County Sheriff's Motion to Dismiss
and denied Plaintiff's Motion to Vacate Sentence and Judgment.

On February 26, 2014, the Court heard oral argument on
Plaintiff's Motion to Declare PCC 14 A.50.020 Unconstitutional
and took the Motion under advisement.


## DISCUSSION

In his Motion Plaintiff asserted he seeks a declaration by
this Court that Portland City Code (PCC) 14A.50.020 is

unconstitutional on its face[1] because it (1) is a punishment in violation of the Eighth Amendment, (2) is a Bill of Attainder, (3) violates the Fourth Amendment, (4) deprives Plaintiff of due process, and (5) violates the Equal Protection Clause. At oral argument Plaintiff also asserted PCC 14A.50.020 violates his constitutional right to travel.

**I.   PCC 14A.50.020.**

PCC 14A.50.020 provides:

> A.   As used in this Section:
>
> 1.   "To camp" means to set up, or to remain in or at a campsite, for the purpose of establishing or maintaining a temporary place to live.
>
> 2.   "Campsite" means any place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.
>
> B.   It is unlawful for any person to camp in or upon any public property or public right of way, unless otherwise specifically authorized by this Code or by declaration by the Mayor in emergency circumstances.
>
> C.   The violation of this Section is punishable, upon conviction, by a fine of not more than $100 or by imprisonment for a period not to exceed 30 days or both.

**II.   PCC 14A.50.020 does not violate the Eighth Amendment.**

Plaintiff contends in his Motion that "the anti-camp

---

[1] Plaintiff made clear at oral argument that in this Motion he makes only a facial challenge to PCC 14A.50.020 rather than an "as-applied" challenge.

Ordinance punishes thousands of Oregonians who have <u>no legal</u> <u>place to sleep</u>."  Emphasis in original.

In *Bell v. City of Boise* the plaintiffs asserted, among other things, that the City of Boise's enforcement of its camping and sleeping ordinances violated the Eighth Amendment.  834 F. Supp. 2d 1103 (D. Idaho 2011)*, rev'd on other grounds by Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013).  In the portion of the opinion overturned by the Ninth Circuit, the district court held the plaintiffs' claim was mooted by changes made to the City's camping codes.  In the portion of the opinion not overturned by the Ninth Circuit, however, the district court noted:

> The United States Supreme Court has held that applying criminal laws to punish the involuntary status of an individual is unconstitutional.  *See Robinson v. California*, 370 U.S. 660 (1962).
>
> * * *
>
> The Supreme Court draws a distinction between laws that criminalize status, which are unconstitutional, and laws that criminalize conduct, which may be constitutional.  For example, . . . [i]n *Powell* [*v. State of Tex.*, 392 U.S. 514 (1968)], [the Supreme Court] found the criminal defendant was not penalized for being an alcoholic; he was punished for the conduct of being drunk in public, a behavior the State of Texas could criminalize without violating the Constitution.
>
> Applying this Supreme Court precedent, the Ninth Circuit held a Los Angeles ordinance that criminalized sitting, lying, or sleeping in a public way at any time of day was unconstitutional as applied to the homeless.  *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) *vacated by*

505 F.3d 1006 (9th Cir. 2007).² . . .  In so
ruling, the Ninth Circuit panel made a distinction
between the Los Angeles ordinance which operated
as a complete ban on innocent acts, such as
sitting, lying, or sleeping in a public way at any
time of day, and other ordinances that are
directed toward conduct beyond merely being
present in public places.

> Other cities' ordinances similarly directed
> at the homeless provide ways to avoid
> criminalizing the status of homelessness by
> making an element of the crime some conduct
> in combination with sitting, lying, or
> sleeping in a state of homelessness.  For
> example, Las Vegas prohibits standing or
> lying in a public way only when it obstructs
> pedestrian or vehicular traffic.  *See, e.g.*,
> Las Vegas, Nev., Mun. Code § 10.47.020 (2005)
> ("It is unlawful to intentionally obstruct
> pedestrian or vehicular traffic. . . .").
> Others, **such as Portland**, prohibit 'camping'
> in or upon any public property or public
> right of way.  *See, e.g.*, Portland, Or., Mun.
> Code §§ 14A.50.020, .030 (2006)(prohibiting
> obstruction of public sidewalks in a
> designated area or camping on public
> property).

*Id.* at 1123.  In *Jones*, the Ninth Circuit found
that the overly expansive reach of the Los Angeles
ordinance was its fatal flaw, as the homeless
violated the statute just by being present on the
public rights of way.

*Id.* at 1107-08 (emphasis added).

As noted in *Bell*, the Ninth Circuit in *Jones* specifically

distinguished PCC 14A.50.020 from the ordinance that violated the

---

² The court noted "[t]he *Jones* decision was later vacated as
a result of a settlement agreement; therefore the opinion is not
binding.  Nonetheless, it does shed light on the issue and how
the Ninth Circuit might approach such challenges in the future."
834 F. Supp. 2d at 1107 n.1.

Eighth Amendment in *Jones*.  Although *Jones* is not precedential,
it suggests the Ninth Circuit would find PCC 14A.50.020 does not
violate the Eighth Amendment.

In *Anderson v. City of Portland* the plaintiffs, homeless
individuals, alleged, among other things, that the City's
enforcement of PCC 14A.50.020, "in conjunction with other
policies and practices, violate[d] homeless individuals' right[]
to be free from cruel and unusual punishment under the Eighth
Amendment."  No. 08-1447-AA, 2011 WL 6130598, at *2 (D. Or.
Dec. 7, 2011).  Chief Judge Ann Aiken concluded:

> Given the legitimate governmental interests of
> safety and sanitation cited by defendants and the
> differing interpretations that result from the
> summary of citations and the manner of their
> enforcement, plaintiffs do not establish, as a
> matter of law, that defendants' enforcement
> actions criminalize status as opposed to conduct
> in violation of the Eighth Amendment.

*Id*., at *4 (citing *Powell v. Texas*, 392 U.S. 514, 532 (1968)
(approving criminal sanctions "for public behavior which may
create substantial health and safety hazards . . . and which
offends the moral and esthetic sensibilities of a large segment
of the community")).  The Court agrees with Chief Judge Aiken's
conclusion that PCC 14A.50.020 does not criminalize status and,
therefore, also concludes it does not on its face violate the
Eighth Amendment.

Accordingly, the Court denies Plaintiff's Motion for a
declaration that PCC 14A.50.020 on its face violates the Eighth

10 - OPINION AND ORDER

Amendment.

**III.   PCC 14A.50.020 is not a Bill of Attainder.**

Plaintiff asserts in his Motion that "when the city posts 'Illegal Campsite' notices and then confiscates property . . . their use of the anti-camp ordinance comprises As [*sic*] a <u>Bill of Attainder</u>."  Emphasis in original.

> "Three key features brand a bill of attainder: that the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial."  *SeaRiver Maritime Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002). The Supreme Court has emphasized that a statute must show "unmistakable evidence of punitive intent" before it may be struck down as a bill of attainder.  *Flemming v. Nestor*, 363 U.S. 603, 619 (1960).  In determining whether a statute inflicts punishment, we look to whether the statute "'falls within the historical meaning of legislative punishment'" or does not "'further nonpunitive legislative purposes.'"  *SeaRiver*, 309 F.3d at 673 (quoting *Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 852 (1984)).

*Hamad v. Gates*, 732 F.3d 990, 1004 (9th Cir. 2013).

   **A.   PCC 14A.50.020 does not specify affected persons.**

As noted, PCC 14A.50.020(B) provides it "is unlawful for *any* person to camp in or upon any public property or public right of way."  Emphasis added.  PCC 14A.50.020, therefore, "describes the affected population in terms of general applicability" rather than "sing[ling] out" on its face "a person or class within the meaning of the Bill of Attainder Clause." *SeaRiver*, 309 F.3d at 669.

11 - OPINION AND ORDER

In addition, PCC 14A.50.020 does not "define[ ] the individual or class by 'past conduct [that] operates only as a designation of particular persons.'"  *Id.* (quoting *Selective Serv. Sys.*, 468 U.S. at 847).  It proscribes only present conduct by any member of the public.

**B.    PCC 14A.50.020 does not inflict punishment**.

PCC 14A.50.020 also does not show on its face "unmistakable evidence of punitive intent," but instead it "further[s] [the] nonpunitive legislative purposes" of maintaining the enjoyment, safety, comfort and convenience of the public and enhancing the orderly administration of public parks.

**C.    A judicial trial is required before conviction**.

The City points out that individuals may not be found guilty of violating PCC 14A.50.020 except through a judicial trial.  In addition, although authorities may remove property found at illegal campsites, Oregon Revised Statute § 203.079(1) requires the policies adopted by municipalities and counties for the removal of those camping on public property to comply with due process by providing the following:

> (a) Prior to removing homeless individuals from an established camping site, law enforcement officials shall post a notice, written in English and Spanish, 24 hours in advance.
>
> * * *
>
> (d) All unclaimed personal property shall be given to law enforcement officials whether 24-hour notice is required or not.  The property shall be

> stored for a minimum of 30 days during which it
> will be reasonably available to any individual
> claiming ownership.  Any personal property that
> remains unclaimed for 30 days may be disposed of.
> For purposes of this paragraph, "personal
> property" means any item that is reasonably
> recognizable as belonging to a person and that has
> apparent utility.  Items that have no apparent
> utility or are in an insanitary condition may be
> immediately discarded upon removal of the homeless
> individuals from the camping site.  Weapons, drug
> paraphernalia and items that appear to be either
> stolen or evidence of a crime shall be given to
> law enforcement officials.

Portland Police Bureau's Administrative Rule PFS 3.04[3] was

promulgated pursuant to the directive in Oregon Revised Statute

§ 203.077 that all municipalities shall develop a policy for

removal of camps on public property.  PFS 3.04 requires officers

to post notice of an illegal campsite at least 24 hours before

removal of any items, to notify community outreach workers that a

notice of illegal campsite has been posted, and to store personal

property removed from an illegal campsite for 30 days.  In

addition, the City Attorney represented to the Court at oral

argument that an individual may only be convicted of violation of

PCC 14A.50.020 through a judicial trial.  Tr. 22.  *See also*

14A.50.020(C).

Plaintiff, therefore, has not established PCC 14A.50.020 is

on its face a Bill of Attainder.  Accordingly, the Court denies

Plaintiff's Motion for a declaration that PCC 14A.50.020 on its

---

[3] PFS 3.04 is formerly Portland Police Bureau Directive
835.20, which was cited by the parties at oral argument.

face is a Bill of Attainder.

**IV.  PCC 14A.50.020 does not violate the Fourth Amendment or the Due Process Clause.**

Plaintiff asserts PCC 14A.50.020 on its face violates the Fourth Amendment and the Due Process Clause of the Fifth Amendment.

The Fourth Amendment prohibits only those searches and seizures that are "unreasonable."  The Fifth Amendment, applied to the states through the Fourteenth Amendment, provides "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of laws."  Due process requires notice and the opportunity to be heard.  *United States v. Shanholtzer*, 492 F. App'x 799, 801 (9th Cir. 2012)(citation omitted).

As noted, Oregon Revised Statute § 203.079(1) requires the policies adopted by municipalities and counties for the removal of individuals camping on public property to comply with due process and the Fourth Amendment by including provisions for 24-hour notice, storage of removed property, and notice to community outreach organizations of notice and removal of illegal campsites.  With respect to removal of individuals and property from illegal campsites on public property, PFS 3.04 provides:

> Members will ensure an established campsite is posted at least 24 hours prior to cleanup. Members will notify JOIN (the local agency that delivers social ser-vices to homeless individuals) in

14 - OPINION AND ORDER

advance of posting to allow collaboration with
outreach workers to offer assistance.

* * *

Any 24-hour notice posted for removal of an
established campsite will be written in both
English and Spanish.

As required by ORS 203.079(b), anytime a member
posts a 24-hour notice, JOIN is notified where the
notice has been posted.

* * *

Arrest Situations:  Items such as sleeping bags,
bedding, or shopping carts, which are going to be
used as evidence of the crime of illegal camping,
shall be listed on an evidence receipt. If a
camera is readily available so the evidence can be
photographed at the scene, the evidence should be
released to the owner.  If a camera is
unavailable, or the illegal camper is to be taken
into custody, the evidence will be dealt with
pursuant to Evidence and Property Procedure, DIR
660.10.

Incomplete Camping Investigations:  Item(s) taken
as evidence during an investigation of illegal
camping where no person has yet been arrested,
will be listed on an evidence receipt, placed in
plastic bag(s) and stored at Stanton Yard, where
it will be held for at least thirty (30) days.
Property that is to be stored at Stanton Yard,
including shopping carts, shall be tagged with a
completed Stanton Yard Property Receipt indicating
the date and location from which it was removed,
and any other identifying information.

Abandoned Non-Valuables:  If campers are present,
they should be encouraged to clean the site
themselves in order to reduce the Bureau's need to
provide trucks and other necessary equipment.  In
any event, discarded clothing and blankets,
cardboard bedding, trash, etc., can be bagged and
deposited in a proper disposal area.

* * *

> Personal Property:  For the purposes of this
> directive, personal property means any item that
> is reasonable recognizable as belonging to a
> person and that has apparent use.  These items of
> personal property will be stored for a minimum of
> thirty (30) days.  Items that have no apparent use
> or are in an unsanitary condition may be
> immediately discarded upon removal of the homeless
> individuals from the camping site.

Courts in this district and in the Ninth Circuit have not held ordinances violate the Fourth or Fifth Amendment when they allow for seizure and removal of property from illegal campsites after 24-hour advance notice and that include an opportunity to reclaim the property.  *See, e.g., Todd v. City of Portland*, No. 3:12-CV-2239-JE, 2013 WL 1562965, at *3 (D. Or. Mar. 20, 2013)("Plaintiff's allegation that the 'Parks Department left an eviction type notice' at his camp in Forest Park is insufficient to assert constitutional violations by the City of Portland."). *Cf. Lavan v. City of Los Angeles,* 693 F.3d 1022, 1032-33 (9th Cir. 2012)(municipality's seizure and immediate destruction of homeless persons' unabandoned property on public sidewalks without prior notice and without the opportunity for them to retrieve their property violated Fourth and Fourteenth Amendments).

The Court concludes PCC 14A.50.020 does not on its face violate the Fourth Amendment or Due Process Clause of the Fifth Amendment.  Accordingly, the Court denies Plaintiff's Motion for a declaration that PCC 14A.50.020 on its face violates the Fourth

16 - OPINION AND ORDER

Amendment and Due Process Clause.

**V.   PCC 14A.50.020 does not violate the constitutional right to travel.**

"Citizens have a fundamental right of free movement, historically part of the amenities of life as we have known them." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997)(citation and quotation omitted).  The Supreme Court has "expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty' protected by the Constitution." *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999).  Further, the United States Constitution guarantees the fundamental right to interstate travel.  *Nunez*, 114 F.3d at 944 (citing *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969)).

As noted, at oral argument Plaintiff also asserted PCC 14A.50.020 on its face violates his constitutional right to travel.  As one court explained:

> The right to travel argument is not altogether new in litigation involving the homeless.  It is well-established that if government action infringes upon the fundamental right to interstate travel, the action may be sustained only if it passes strict scrutiny, *i.e.* compelling state interest and least restrictive means.  *Shapiro v. Thompson*, 394 U.S. 618 (1969).  The right to travel generally arises in the context of residency duration requirements imposed by states to discourage the immigration of indigents.  *See, e.g., Joyce v. City and County of San Francisco*, 846 F. Supp. 843, 860-61 (N.D. Cal. 1994); *Tobe v. City of Santa Ana*, 892 P.2d 1145, 1162-63 (1995).

>           Nonetheless, at least one federal district court
>           has held that enforcing a homeless ordinance . . .
>           effectively burdens the homeless person's right to
>           travel, especially when the individual has no
>           place to go.  *Pottinger v. City of Miami*, 810 F.
>           Supp. 1551, 1579-83 (S.D. Fla. 1992).  This result
>           has been rejected, however, in at least four other
>           cases.  *See Roulette v. City of Seattle*, 850 F.
>           Supp. 1442, 1447-48 (W.D. Wash. 1994); *Joyce*, 846
>           F. Supp. at 860; *Tobe*, 892 P.2d at 1165; *Seeley v.
>           State*, 134 Ariz. 263, 655 P.2d 803 (App. 1982).

*Davison v. City of Tuscon*, 924 F. Supp. 989, 993 (D. Ariz. 1996).

The *Davison* court also rejected the holding of *Pottinger*:

>           [T]he fundamental right to interstate travel is
>           not implicated in the instant case.  The
>           Defendants' action does not impede the travel of
>           any of the named plaintiffs because they do not
>           seek to travel anywhere; they seek only to remain.
>           As the California Supreme Court stated in *Tobe*:
>
> >               The right to travel does not . . . endow
> >               citizens with a "right to live or stay where
> >               one will."  While an individual may travel
> >               where he will and remain in a chosen
> >               location, that constitutional guaranty does
> >               not confer immunity against local trespass
> >               laws and does not create a right to remain
> >               without regard to the ownership of the
> >               property on which he chooses to live or stay,
> >               be it public or privately owned property.

*Id*.

Chief Judge Ann Aiken addressed and rejected the plaintiffs' assertion that PCC 14A.50.020 violated their constitutional right to travel in *Anderson v. City of Portland*.  Chief Judge Aiken rejected *Pottinger* and adopted the reasoning of *Davison*:

>           I fail to discern how the alleged actions of the
>           City interfere with plaintiffs' constitutional
>           right to travel.  Plaintiffs allege that police
>           officers have told them to "move along" when

18 - OPINION AND ORDER

> sleeping in public and conducted camp clean-ups
> and seized their property.  However, plaintiffs do
> not allege that the City has attempted to restrain
> their movement, prevented them from traveling to
> or from the City, or excluded them from certain
> areas of the City. . . .  [T]he City's enforcement
> of the anti-camping and temporary structure
> ordinances . . . does not constitute inference
> with plaintiffs' right to travel or freedom of
> movement that rises to the level of a
> constitutional deprivation.

No. 80-CV-1447-AA, 2009 WL 2386056, at *9 (D. Or. Jul. 31, 2009).

This Court adopts the reasoning of *Davison* and *Anderson* and concludes PCC 14A.50.020 does not on its face violate the constitutional right to travel.  Accordingly, the Court denies Plaintiff's Motion for a declaration that PCC 14A.50.020 on its face violates the constitutional right to travel.

**VI.  PCC 14A.50.020 does not on its face violate Plaintiff's right to equal protection.**

Plaintiff asserts PCC 14A.50.020 is overbroad and, as a result, numerous locations could be found to be in violation of that ordinance including public hospitals, fire stations, public shelters, motor homes, and "anyone carrying bedding," which "allows unequal enforcement" in violation of the Equal Protection Clause.  The "Supreme Court[, however,] has not applied overbreadth outside the limited context of the First Amendment," and the Ninth Circuit has also declined to do so.  *Nunez by Nunez*, 114 F.3d at 949 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  Accordingly, an overbreadth analysis does not

19 - OPINION AND ORDER

apply in the equal protection context.[4]

The Supreme Court has held government actions that discriminate on the basis of a suspect classification or infringe on constitutionally protected rights are valid only if they serve a compelling state interest. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).  Plaintiff, however, does not allege he is a member of a suspect classification or that PCC 14A.50.020 impacts members of a suspect classification more heavily than others outside that class.  At oral argument, however, Plaintiff asserted PCC 14A.50.020 infringes on the constitutionally protected interest to the right to travel, and, therefore, PCC 14A.50.020 is valid only if it serves a compelling state interest.

The Court has already concluded PCC 14A.50.020 does not violate Plaintiff's right to interstate travel or to any other constitutional right.  PCC 14A.50.020, therefore, is valid if it is rationally related to a legitimate government interest. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007)(citations omitted).  PCC 20.12.010 sets out the purpose for the prohibition on placement of permanent or

---

[4] In addition, the City points out that only "campsites" on public property are implicated by the Ordinance and, therefore, hospitals, fire stations, shelters, and motor homes that are not on public property are unaffected by PCC 14A.50.020.  Hospitals, fire stations, shelters, and motor homes on public property are allowed under the zoning code.

20 - OPINION AND ORDER

temporary structures on parks property without a permit:

> The purpose of this Chapter is to preserve the
> Parks for the enjoyment, safety, comfort and
> convenience of the public and to enhance the
> orderly administration of the Parks, by
> prohibiting conduct that unreasonably interferes
> with the administration and lawful use of the
> Parks.  The purpose of this Chapter is not to
> punish any person for prior conduct, but, rather,
> to provide civil and non-punitive regulations the
> Council finds necessary to prevent nuisances and
> to protect the health, welfare and safety of the
> public using the City's Parks.

As the Court noted in its July 11, 2013, Opinion and Order
denying Plaintiff's Motion for Preliminary Injunction (#94),
permitting Plaintiff to camp and/or to live in City of Portland
parks would necessarily interfere with the enjoyment, comfort,
and convenience of other members of the public using those parks
as well as with the administration of those parks.

The Court, therefore, concludes Plaintiff has not
established PCC 14A.50.020 is not rationally related to
legitimate government interests and, therefore, has not
established PCC 14A.50.020 on its face violates the Equal
Protection Clause.

Accordingly, the Court denies Plaintiff's Motion for a
declaration that PCC 14A.50.020 on its face violates Plaintiff's
right to equal protection.


## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion

21 - OPINION AND ORDER

(#110) to Declare PCC 14 A.50.020 Unconstitutional.

IT IS SO ORDERED.

DATED this 12th day of May, 2014.


                                        /s/ Anna J. Brown

                                        _____
                                        ANNA J. BROWN
                                        United States District Judge


22 - OPINION AND ORDER