IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL O'CALLAGHAN,                          3:12-CV-00201-BR

        Plaintiff,                          OPINION AND ORDER

v.

CITY OF PORTLAND; MULTNOMAH
COUNTY SHERIFF; WESTSIDE
COMMUNITY COURT; CITY OF
PORTLAND HEARINGS OFFICER
GREGORY FRANK; DIRECTOR KURT
NELSON, CITY PARKS; STUART
PALMITER,

        Defendants.


MICHAEL O'CALLAGHAN
P.O. Box 3321
Portland, OR 97208
(503)960-3787

        Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**JAMES H. VAN DYKE**
City Attorney
**JAMES G. RICE**
Deputy City Attorney
City of Portland
1221 S.W. Fourth Avenue
Room 430
Portland, OR 97204
(503) 823-4047

      Attorneys for Defendants City of Portland, Kurt Nelson,
      Gregory Frank, and Stuart Palmiter

**BROWN, Judge.**

    This matter comes before the Court on the Motion (#232) for

Summary Judgment of Defendants City of Portland, Kurt Nelson,

Gregory Frank, and Stuart Palmiter.  For the reasons that follow,

the Court **GRANTS** Defendants' Motion and **DISMISSES** this matter

**with prejudice.**


<u>**BACKGROUND**</u>

    Because the parties are familiar with the lengthy history of

this action, the Court sets forth only the facts relevant to the

pending Motion.

    On July 23, 2013, Plaintiff filed a Second Amended Complaint

against various Multnomah County employees, the City of Portland,

Kurt Nelson, Gregory Frank, and Stuart Palmiter in which

Plaintiff alleged Defendants violated his rights under the Fourth

and Fifth Amendments to the United States Constitution based on

four events:  (1) Plaintiff's January 26, 2011, arrest;

2 - OPINION AND ORDER

(2) Plaintiff's January 27, 2011, arrest; (3) Plaintiff's February 9, 2011, arrest; and (4) the destruction of Plaintiff's home in February 2011.

On August 12, 2013, the Multnomah County Sheriff filed a Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to FRCP 12(b)(1) and (6) as to the Multnomah County Defendants.

On October 21, 2013, Plaintiff filed a Motion to Declare [Portland City Code] P.C.C. 14A.60.020 Unconstitutional on its face.

On October 29, 2015, the Court entered an Opinion and Order in which it granted Multnomah County Sheriff's Motion and dismissed Plaintiff's claims against the Multnomah County Defendants without leave to amend.  The Court noted this matter would proceed only as to Plaintiff's claims against the City of Portland, Kurt Nelson, Gregory Frank, and Stuart Palmiter.

On May 12, 2014, the Court entered an Opinion and Order in which it denied Plaintiff's Motion to Declare P.C.C. 14A.60.020 Unconstitutional.

On May 29, 2014, Plaintiff filed a Motion for Reconsideration of the Court's May 12, 2014, Opinion and Order denying Plaintiff's Motion to Declare P.C.C. 14A.60.020 Unconstitutional.  On July 25, 2014, the Court granted Plaintiff's Motion for Reconsideration to the extent that the Court reconsidered its May 12, 2014, Opinion and Order.  The

Court, however, adhered to its May 12, 2014, Opinion and Order.

On August 14, 2014, the Court directed the parties to file no later than September 4, 2014, an updated Joint Statement of the Case that set out (1) a summary of agreed facts, (2) a summary of each remaining claim, and (3) a summary of each remaining defense to Plaintiff's claims.

On September 11, 2014, Plaintiff filed a Statement of the Case in which he listed as additional issues or claims: (1) the removal of Plaintiff's property from private property on June 1, 2011; (2) theft of Plaintiff's property on October 20, 2009; and (3) an unspecified issue with a Hearings Officer.

On May 5, 2015, the remaining Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims.

On May 6, 2015, the Court issued a Summary Judgment Advice Notice to Plaintiff in which it advised him that if he did not submit evidence in opposition to Defendants' Motion for Summary Judgment, summary judgment would be entered against him if it was appropriate.

The Court took Defendants' Motion for Summary Judgment under advisement on September 22, 2015, without oral argument. Given the numerous proceedings at which Plaintiff has appeared personally to articulate his written arguments, the Court is satisfied oral argument on this Motion for Summary Judgment would

not be helpful.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*. "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary

judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

As noted, Defendants move for summary judgment as to all of Plaintiff's claims set out in both his Second Amended Complaint and in his Statement of Claims.

**I.   Claim One:  Arrest on January 26, 2011**

Plaintiff alleges in his Second Amended Complaint that he

was arrested without probable cause on January 26, 2011, by
Portland Police Officer Stuart Palmiter "assisted by Nelson" in
violation of the Fourth Amendment.

**A.   Facts**

On January 26, 2011, Officer Palmiter and Portland Park
Ranger Kurt Nelson were on patrol along the Springwater Trail
south of the Ross Island Bridge.   At 2:10 p.m. Officer Palmiter
noticed an abandoned bicycle and "looked around the area to see
if [he] could locate its owner."   Decl. of Stuart Palmiter at
¶ 4.   While looking for the owner of the bicycle, Officer
Palmiter and Ranger Nelson looked over the edge of the embankment
and saw Plaintiff digging into the embankment with a pickax.
Ranger Nelson and Officer Palmiter climbed down the embankment to
investigate.   Officer Palmiter and Ranger Nelson looked up and
saw a cave approximately four feet wide, four feet high, and
eight feet deep that had been dug into the embankment and
reinforced with 2"x6" wood planks.   Officer Palmiter and Ranger
Nelson noticed Plaintiff had dirt on his hands and clothing.   In
addition to the pickax that Plaintiff was holding, Ranger Nelson
also noticed a shovel and a pile of dirt immediately next to
Plaintiff.   As they approached Plaintiff, he began to walk away.
Officer Palmiter directed Plaintiff to stop.   Officer Palmiter
then arrested Plaintiff for violation of Oregon Revised Statute
§ 164.345 (criminal mischief).

Plaintiff, Officer Palmiter, and Ranger Nelson climbed up the embankment.  At the top, Officer Palmiter searched Plaintiff and placed him in handcuffs.  Ranger Nelson issued to Plaintiff a 180-day Park Exclusion[1] for vandalism in violation of P.C.C. 20.12.100, erecting a structure in a park in violation of P.C.C. 20.12.080, and criminal mischief.  Officer Palmiter then transported Plaintiff to the Multnomah County Detention Center (MCDC).

On January 27, 2011, Multnomah County District Attorney Michael Schrunk filed an Information against Plaintiff for criminal mischief in the second degree in violation of Oregon Revised Statute § 164.345 related to Plaintiff's January 26, 2011, arrest.

Plaintiff appealed his exclusion and arrest.  On February 22 and 25, 2011, City of Portland Hearings Officer Gregory Frank held hearings on Plaintiff's appeal.  On March 14, 2011, Hearings Officer Frank issued an Order in which he found the property on which the cave was located was property within the jurisdiction of the City of Portland and within the enforcement jurisdiction of Ranger Nelson and Officer Palmiter.

---

[1] P.C.C. 20.12.265(a) provides:  "In addition to other remedies provided for violation of this Code, or of any of the laws of the State of Oregon, any Park Officer may exclude any person who violates any applicable provision of law in any Park from that Park in accordance with the provisions of this Section."

Hearings Officer Frank concluded Plaintiff violated Oregon Revised Statute § 164.345 and P.C.C. 20.12.080 and upheld Plaintiff's exclusion.

On March 14, 2011, Multnomah County Circuit Court Judge Steven Evans entered a judgment of conviction of Plaintiff for violation of Oregon Revised Statute § 164.345 related to his arrest on January 26, 2011.

Plaintiff appealed his conviction for violation of § 164.345 to the Oregon Court of Appeals. On May 10, 2011, the Oregon Court of Appeals entered a judgment dismissing Plaintiff's appeal.

On January 13, 2015, the Multnomah County Circuit Court denied Plaintiff's motion to vacate his conviction for violation of § 164.345.

**B.   Analysis**

Plaintiff asserts he was arrested without probable cause for violating § 164.345 in violation of his rights under the Fourth Amendment. The record, however, reflects Plaintiff was convicted of that crime and his conviction has not been overturned or vacated.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

invalid, a § 1983 plaintiff must prove that the
conviction or sentence has been reversed on direct
appeal, expunged by executive order, declared
invalid by a state tribunal authorized to make
such determination, or called into question by a
federal court's issuance of a writ of habeas
corpus, 28 U.S.C. § 2254.  A claim for damages
bearing that relationship to a conviction or
sentence that has not been so invalidated is not
cognizable under § 1983.  Thus, when a state
prisoner seeks damages in a § 1983 suit, the
district court must consider whether a judgment in
favor of the plaintiff would necessarily imply the
invalidity of his conviction or sentence; if it
would, the complaint must be dismissed unless the
plaintiff can demonstrate that the conviction or
sentence has already been invalidated.

*Id.* at 486-87 (footnotes omitted).

In *Smith v. City of Hemet* the Ninth Circuit reiterated:

"[I]f a criminal conviction arising out of the same facts stands

and is fundamentally inconsistent with the unlawful behavior for

which section 1983 damages are sought, the 1983 action must be

dismissed."  394 F.3d 689, 695 (9th Cir. 2005)(quotation

omitted).  "Consequently, 'the relevant question is whether

success in a subsequent § 1983 suit would necessarily imply or

demonstrate the invalidity of the earlier conviction or

sentence.'"  *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042

(9th Cir. 2012)(quoting *Heck*, 512 U.S. at 487).

The Ninth Circuit has held a plaintiff's claim for

wrongful arrest is barred under *Heck* when, as here, the plaintiff

is unable to show both that his conviction is not inconsistent

with such a claim and that the conviction was overturned or

reversed. *See, e.g., Backus v. Gissel*, 491 F. App'x 838, 839
(9th Cir. 2012)(affirming district court's dismissal of the
plaintiff's § 1983 claims for false arrest and malicious
prosecution "as *Heck*-barred" because success on those claims
would necessarily imply the invalidity of the plaintiff's arrest
and conviction.); *Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir.
2006)(*Heck* barred the plaintiff's claims under § 1983 for
wrongful arrest, malicious prosecution, and conspiracy because
success on those claims "would necessarily imply the invalidity
of his two convictions for possession of narcotics.  Wrongful
arrest, malicious prosecution, and a conspiracy among Los Angeles
officials to bring false charges against [the plaintiff] could
not have occurred unless he were innocent of the crimes for which
he was convicted."); *Johnson v. Arndt*, 124 F. App'x 514, 515 (9th
Cir. 2005)("The district court properly dismissed without
prejudice [the plaintiff's] illegal seizure and wrongful arrest
claims [as barred by *Heck*] because success on these claims would
necessarily imply the invalidity of [the plaintiff's]
convictions, and he has not demonstrated that those convictions
have been overturned.").

        Plaintiff's conviction for violation of § 164.345 has
not been overturned or vacated.  In addition, success on
Plaintiff's claim of arrest without probable cause for violation
of § 164.345 on January 26, 2011, would necessarily imply the

invalidity of Plaintiff's conviction for that crime.  The Court, therefore, concludes Plaintiff's § 1983 claim for wrongful arrest on January 26, 2011, is barred by *Heck*.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for arrest without probable cause on January 26, 2011.

## II.  Claim Two:  Arrest on January 27, 2011

In his Second Claim Plaintiff asserts he was arrested without probable cause on January 27, 2011, in violation of the Fourth Amendment.

### A.  Facts

Plaintiff was taken to MCDC on January 26, 2011, by Officer Palmiter.  Plaintiff was released from custody on January 26, 2011, and submitted at some time after 5:00 p.m. an Appeal form to a Portland Police Bureau desk clerk in which he appealed the 180-day exclusion.

The Appeal form is a multiple-page carbonless-copy form.  The top copy is retained by the Portland Police Bureau, and the second copy is labeled as "APPELLANT'S COPY."  The form advises appellants "THIS IS YOUR APPEAL RECEIPT.  DO NOT LOSE IT. KEEP IT WITH YOU AT ALL TIMES UNTIL YOUR HEARING."  Decl. of Kim Lee, Ex. 4 at 1.

Appeals forms are initially taken in by a Portland Police Bureau "desk person" who returns the Appellant copy to the

12 - OPINION AND ORDER

individual submitting the appeal.  The desk person then forwards
the appeal and a copy of the exclusion (if one is provided)
through interoffice mail to "complaint signers" located at the
Portland Police Bureau's Central Precinct.  When the complaint
signer obtains the original exclusion from the Police Records
Division, Parks Bureau, or another issuing agency, she writes a
Special Report documenting that an appeal has been filed and
noting the exclusion has been suspended[2] until final disposition
of the appeal.  The complaint signer then time-and-date stamps
the Special Report and copies of the exclusion appeal and places
the paperwork in an inbox in the Police Records Division.  Staff
from the Police Records Division then change the status of the
exclusion in the Portland Police Bureau computer system to
reflect the appeal.  As a result of this process, there is a "lag
time" between when the appeal is received by the desk clerk and
when it is entered into the computer system.  A police officer or
park ranger who has issued an exclusion does not have any way to
know that the exclusion has been appealed or suspended until the
Portland Police Bureau computer system updates the status of the
exclusion.

The record reflects Plaintiff submitted the appeal of

---

[2] P.C.C. 20.12.265(H) provides in pertinent part:  "If an
appeal of the exclusion is timely filed . . ., the effectiveness
of the exclusion shall be stayed, pending the outcome of the
appeal."

his exclusion to a Portland Police Bureau desk clerk at some time after 5:00 p.m. on January 26, 2011.  Plaintiff was given the appellant's copy of the appeal form, but the complaint signer's office closed at 5:00 p.m.   Portland Police Bureau complaint signer Kim Lee received Plaintiff's appeal and wrote a Special Report at 8:12 a.m. on January 27, 2011, documenting that Plaintiff had filed an appeal and noting suspension of the exclusion.

On January 27, 2011, Portland Park Technician Robert Downs reported to the Springwater Corridor to inspect and to repair the damage in the embankment of the Springwater Corridor where Plaintiff had excavated his cave.  Downs removed the lumber and tools that he found at the site and collapsed the tunnel to prevent it from caving in.  Plaintiff appeared at the site at approximately 10:00 a.m. and advised Downs that it was Plaintiff's "camp" and Downs was "messing up his work."  Decl. of Robert Downs at ¶ 13.  Downs telephoned Ranger Nelson and informed him of Plaintiff's presence.

Ranger Nelson, in turn, called Officer Palmiter at 10:20 a.m., and both made their way to the site.  Plaintiff left the site before Nelson or Palmiter arrived.  Nelson and Palmiter searched the area for Plaintiff and found him "a short distance away."  Decl. of Kurt Nelson at ¶ 32.  Officer Palmiter arrested Plaintiff for trespass, and Ranger Nelson issued Plaintiff a 180-

day exclusion for trespass because he believed Plaintiff was in violation of the January 26, 2011, exclusion.

It is undisputed that neither Officer Palmiter nor Ranger Nelson knew Plaintiff had appealed his January 26, 2011, exclusion at the time of Plaintiff's January 27, 2011 arrest: the record of Plaintiff's appeal of his exclusion and the stay of that exclusion were not in the Portland Police Bureau computer system at the time of Plaintiff's January 27, 2011, arrest.  It is also undisputed that Plaintiff did not show Officer Palmiter or Ranger Nelson his copy of the appeal form.  At 11:07 a.m. Plaintiff was transported to MCDC.

Plaintiff appealed his January 27, 2011, exclusion and arrest and Hearings Officer Frank reversed both on the ground that Plaintiff's January 26, 2011, exclusion had been suspended at the time of his January 27, 2011, arrest.

## B.  Analysis

Plaintiff alleges he was wrongfully arrested on January 27, 2011, in violation of the Fourth Amendment because at the time of his arrest Plaintiff had appealed his January 26, 2011, exclusion, which suspended that exclusion.  Thus, according to Plaintiff, he was not in violation of the January 26, 2011, exclusion on January 27, 2011.

Defendants, however, assert Plaintiff's arrest did not violate the Fourth Amendment because Defendants made a reasonable

mistake of fact or law as to the status of Plaintiff's
January 26, 2011, exclusion at the time that they arrested him on
January 27, 2011.

The Supreme Court recently examined mistakes of fact
and law in the context of the Fourth Amendment in *Heien v. North
Carolina*, 135 S. Ct. 530 (2014), and concluded objectively
reasonable mistakes of fact or law may support an arrest.

> As the text indicates and we have repeatedly
> affirmed, "the ultimate touchstone of the Fourth
> Amendment is 'reasonableness.'" *Riley v. Cal.*,
> 573 U.S. ----, ----, 134 S. Ct. 2473, 2482
> (2014)(some internal quotation marks omitted).  To
> be reasonable is not to be perfect, and so the
> Fourth Amendment allows for some mistakes on the
> part of government officials, giving them "fair
> leeway for enforcing the law in the community's
> protection." *Brinegar v. United States*, 338 U.S.
> 160, 176 (1949).  We have recognized that searches
> and seizures based on mistakes of fact can be
> reasonable.  The warrantless search of a home, for
> instance, is reasonable if undertaken with the
> consent of a resident, and remains lawful when
> officers obtain the consent of someone who
> reasonably appears to be but is not in fact a
> resident.  *See Illinois v. Rodriguez*, 497 U.S.
> 177, 183-186 (1990).  By the same token, if
> officers with probable cause to arrest a suspect
> mistakenly arrest an individual matching the
> suspect's description, neither the seizure nor an
> accompanying search of the arrestee would be
> unlawful.  *See Hill v. Cal.*, 401 U.S. 797, 802-805
> (1971).  The limit is that "the mistakes must be
> those of reasonable men." *Brinegar, supra*, at
> 176.
>
> But reasonable men make mistakes of law, too
> . . . .  The officer may be reasonably mistaken on
> either ground.  Whether the facts turn out to be
> not what was thought, or the law turns out to be
> not what was thought, the result is the same:  the
> facts are outside the scope of the law.  There is

> no reason, under the text of the Fourth Amendment
> or our precedents, why this same result should be
> acceptable when reached by way of a reasonable
> mistake of fact, but not when reached by way of a
> similarly reasonable mistake of law.

*Id.* at 536 (citations omitted).  Thus, objectively reasonable

mistakes of law or fact will not render a seizure invalid under

the Fourth Amendment.

The record reflects Officer Palmiter and Ranger Nelson

were aware Plaintiff had been arrested on January 26, 2011, and

excluded from the area of the cave, but they were not aware that

Plaintiff submitted an appeal of his January 26, 2011, exclusion

after 5:00 p.m. on January 26, 2011.  It is also undisputed that

neither Officer Palmiter nor Ranger Nelson knew or could have

known Plaintiff appealed his exclusion because it had not been

entered into the Portland Police Bureau computer system at the

time that they arrested Plaintiff and Plaintiff did not advise

Officer Palmiter or Ranger Nelson about his appeal.

On this record the Court concludes Officer Palmiter and

Ranger Nelson made an objectively reasonable mistake of fact and

law when they believed Plaintiff's January 26, 2011, exclusion

was still in effect and not suspended.  The Court, therefore,

concludes Plaintiff's January 27, 2011, arrest did not violate

his rights under the Fourth Amendment.

Accordingly, the Court grants Defendants' Motion for

Summary Judgment as to Plaintiff's claim for wrongful arrest on

17 - OPINION AND ORDER

January 27, 2011.

**III. Claim Three:  Arrest on February 9, 2011**

In his Third Claim Plaintiff alleges he was arrested without probable cause on February 9, 2011, in violation of the Fourth Amendment.

    **A.    Facts**

On January 31, 2011, Multnomah County Circuit Court issued a Bench/Arrest Warrant for Plaintiff's failure to appear as directed on January 27, 2011, related to his January 26, 2011, arrest.

On February 9, 2011, Officer Palmiter was on patrol in the area of S.E. Ivon Street and S.E. Fourth Avenue and saw Plaintiff.  Officer Palmiter was aware of the January 31, 2011, outstanding warrant and after checking the Portland Police Bureau records, he determined Plaintiff's January 31, 2011, warrant was still in effect.   Officer Palmiter arrested Plaintiff pursuant to the January 31, 2011, warrant and transported Plaintiff to MCDC where he was booked.

    **B.    Analysis**

The Ninth Circuit has repeatedly held "an arrest based on a facially valid warrant is insufficient for . . . a [Fourth Amendment] claim." *Manning v. Baset*, 541 F. App'x 742, 743 (9th Cir. 2013)(citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)).  *See also Spreadbury v. Hoffman*, 465 F. App'x 730, 731

(9th Cir. 2012)("The district court properly dismissed [the plaintiff's] Fourth Amendment claims because an attempted arrest or an arrest based on a facially valid warrant is insufficient for such a claim.").

There is not any indication on the record that the January 31, 2011, warrant was not facially valid or that it was no longer in effect on February 9, 2011, when Officer Palmiter arrested Plaintiff.  The Court, therefore, concludes Plaintiff's February 9, 2011, arrest pursuant to the January 31, 2011, warrant does not support a claim for violation of the Fourth Amendment.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claim related to his February 9, 2011, arrest.

## IV.   Claim Four:  Removal of Plaintiff's campsite at S.E. Fourth Avenue and S.E. Ivon Street on February 8, 2011

The nature of Plaintiff's Fourth Claim related to the removal of his campsite at S.E. Fourth Avenue and S.E. Ivon on February 8, 2011, is not entirely clear.  Plaintiff appears to allege that his campsite was removed without sufficient due process.  Plaintiff also appears to allege again that Portland's anticamping ordinance, P.C.C. 14A.60.020, is unconstitutional.

### A.   Facts

On February 3, 2011, Officer Palmiter posted pursuant to P.C.C. 20.08.010 and 14A.50.020 a Notice of Illegal Campsite

19 - OPINION AND ORDER

at a different campsite that Plaintiff had established on a public right-of-way at S.E. Ivon Street and S.E. Fourth Avenue.

P.C.C. 20.08.010 provides in pertinent part:

> It is unlawful for any person to conduct or participate in any activity in a Park, for which a permit is required, unless the Parks Reservation Center has issued a permit for the activity. A permit is required for any activity in a Park under any one or more of the following circumstances:
>
> *  *  *
>
> B.   The activity includes the placement of any temporary or permanent structure, including but not limited to any table, bench, stage, fence, tent or other facility in a Park.

P.C.C. 14A.50.020 provides:

> A.   As used in this Section:
>
> > 1.   "To camp" means to set up, or to remain in or at a campsite, for the purpose of establishing or maintaining a temporary place to live.
> >
> > 2.   "Campsite" means any place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.
>
> B.   It is unlawful for any person to camp in or upon any public property or public right of way, unless otherwise specifically authorized by this Code or by declaration by the Mayor in emergency circumstances.
>
> C.   The violation of this Section is punishable, upon conviction, by a fine of not more than $100 or by imprisonment for a period not to exceed 30 days or both.

20 - OPINION AND ORDER

Officer Palmiter advised Plaintiff that the campsite would be
"cleaned up" on February 8, 2011, and that Plaintiff should
"collect his possessions and move along."  Palmiter Decl. at
¶ 36.

On February 8, 2011, Officer Palmiter received a call
from the Multnomah County inmate cleanup crew to meet the cleanup
crew at Plaintiff's campsite.  Officer Palmiter observed the
cleanup crew demolish "the makeshift" structure, which consisted
of plywood and tarps, and place it in a trailer.  Plaintiff was
present at the campsite and videotaped the cleanup.  Plaintiff
narrated the video and stated on the video that he had "moved all
his stuff" to the private property adjacent to the campsite and
to his storage unit.

**B.    Analysis**

In his Response to Defendants' Motion for Summary
Judgment Plaintiff states with respect to his claim related to
the cleanup of the campsite on February 8, 2011, that Defendants
"placed no value on my home.  The plaintiff's home had value."

To the extent that Plaintiff contends the removal of
the structure on February 8, 2011, violated his Fifth Amendment
right to due process, Plaintiff's claim is without merit.  The
Fifth Amendment, applied to the states through the Fourteenth
Amendment, provides "[n]o state shall . . . deprive any person of
life, liberty, or property, without due process of laws."  Due

process requires notice and the opportunity to be heard. *United States v. Shanholtzer*, 492 F. App'x 799, 801 (9th Cir. 2012) (citation omitted).  This Court has held numerous times that Portland's anticamping ordinance does not violate due process, and Plaintiff has not established the ordinance violated his right to due process as applied here.  Specifically, the record reflects Plaintiff received notice of the intention to remove the structure five days before the removal occurred, Plaintiff has not established that he had any right to erect a structure on the property, and Plaintiff does not identify any process that he was entitled to receive but did not receive before removal of the structure.

Plaintiff may contend the removal of the structure was a taking in violation of the Fifth Amendment Takings Clause, which provides "private property [shall not] be taken for public use, without just compensation."  U.S. Const. Amend. V.  The Takings Clause "limits the government's ability to confiscate property without paying for it" and "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Vance v. Barrett*, 345 F.3d 1083, 1089 (9th Cir. 2003)(internal quotations and citation omitted).  Plaintiff, however, stated on the video that he had moved all of his personal property from the structure before it was removed.

Plaintiff does not point to any evidence to support a specific value for the tarps and plywood that constituted the structure. Plaintiff also has not alleged or established any facts to support a claim that his personal property was confiscated by Defendants for a public purpose.  Finally, Plaintiff fails to establish that the structure had value for which he was entitled to compensation.  The Court, therefore, concludes to the extent that Plaintiff is alleging a takings claim, such claim fails. *See Kelo v. City of New London, Connecticut*, 545 U.S. 469, 477-80 (2005).

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim related to the removal of his campsite at S.E. Ivon Street and S.E. Fourth Avenue on February 8, 2011.

## V.    **Fifth Claim:  Removal of property on June 1, 2011**

In his Statement of Facts Plaintiff alleges on June 1, 2011, "PPB raided private property with no authority of law and forced the removal of the Plaintiff's home" in violation of his "constitutional rights."  In his Response to Defendants' Motion for Summary Judgment Plaintiff asserts "[f]ive officers swept 3rd & Ivon this was coordinated by Jim Rice."  Plaintiff asserts he had permission to camp on the private property, and, therefore, removal of his property violated his "constitutional rights."

Defendants assert the City of Portland was not involved in

the removal of Plaintiff's campsite from the private property at
S.E. Third Avenue and S.E. Ivon.  In fact, the removal was
instigated by the owner and manager of the property.  Defendants
also assert even if they had been involved in the removal of
Plaintiff's property at that location, Plaintiff has not
established he had any right to camp on the private property,
and, therefore, the removal would not have been unlawful.

**A.    Facts**

On June 1, 2011, Plaintiff had erected another
campsite, this one on private property located at S.E. Third
Avenue and S.E. Ivon.  At that time the property was owned by
Richard Bennett through Portland City Storage, an Oregon LLC.
Bennett and Portland City Storage did not give Plaintiff or any
other individual permission to "camp, reside or erect structures"
on the property.  Decl. of Richard Bennett at ¶ 7.

At some point before June 1, 2011, Bennett employed
licensed commercial real-estate broker Joe Sugura to sell the
property.  Sugura did not give anyone permission "to camp,
trespass, build a structure or place a tent or lean-to on the
. . . property."  Decl. of Joe Sugura at ¶ 3.  Sugura also did
not "authorize[] anyone else to grant permission to allow any
person to camp, live on the property or build a structure or
lean-to or erect a tent on the property."  *Id.* at ¶ 4.

Sugura and Bennett agreed "[h]aving campers and their

make shift structures, tents, garbage and human waste on the
property would have been detrimental to marketing the property to
potential buyers." Bennett Decl. at ¶ 9.  Accordingly, Sugura
"initiated a clean-up of the . . . property as unauthorized
materials had been placed on the property." Sugura Decl. at ¶ 5.

    **B.**   **Analysis**

      Plaintiff does not specify the provision of the
Constitution that Defendants allegedly violated when Plaintiff's
campsite was removed on June 1, 2011.  Plaintiff appears to
assert that Defendants did not have any legal authority to "raid"
the property.  The record, however, reflects neither the property
owner nor the property manager gave Plaintiff permission to camp
or to reside on the private property.  In any event, there is not
any affirmative evidence on this record that Defendants even
participated in the removal of Plaintiff's property from the
private property.  Even if Defendants did participate, however,
Defendants have established Plaintiff did not have any right to
be on the private property.  As noted, the property owner
testified he did not give Plaintiff permission to camp on the
property, and the property manager testifies in his Declaration
that he "initiated the clean up" of the property because
Plaintiff did not have permission to be on the property.

      Oregon Revised Statute § 164.245 provides:  "A person
commits the crime of criminal trespass in the second degree if

the person . . . remains unlawfully . . . upon a premises."
Because Plaintiff did not have permission to be on the property,
he was trespassing.  Assuming for the purpose of this Motion only
that Defendants participated in the removal of Plaintiff's
campsite from the private property, the Court concludes it would
not be unlawful for Defendants to respond to Sugura's request to
remove Plaintiff and his shelter from the property.  Plaintiff
does not point to any law or regulation that requires a landowner
to provide a trespasser with notice of his intent to have the
trespasser removed from his property or that requires any other
process to be provided to a trespasser before removal of the
trespasser or his property.

Accordingly, the Court grants Defendants' Motion for
Summary Judgment as to Plaintiff's claim related to the removal
of his campsite from private property on June 1, 2011.

**VI.   Sixth Claim:  Theft on October 20, 2009**

In his Statement of Facts of the Case and at deposition
Plaintiff alleges Defendants "stole" a different shelter that he
erected and lived in on the sidewalk in front of City Hall on
October 20, 2009.  At deposition Plaintiff testified unidentified
Portland Police officers removed the structure, put it in their
vehicle for 20 minutes, then returned it to Plaintiff.

The Ninth Circuit has held courts must apply the forum
state's statute of limitations for personal-injury claims to any

claims under § 1983. *See, e.g. Butler v. Nat'l Comm. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014)("Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts apply the forum state's statute of limitations for personal injury actions."). Under Oregon law personal-injury claims must be commenced within two years of the injury. *See* Or. Rev. Stat. § 12.110(1).

The Supreme Court, however, has held "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law "a claim accrues . . . when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012)(quotations and citations omitted).

As noted, Plaintiff asserts Defendants "stole" his property in violation of his constitutional rights on October 20, 2009. Plaintiff, however, did not file this action until February 3, 2012,[3] which is more than two years after the alleged removal of Plaintiff's property that forms the basis for his Sixth Claim. There is not any evidence in the record that

_____

[3] Plaintiff did not assert a claim based on the October 20, 2009, removal of his property until Plaintiff filed his Statement of Facts of the Case on September 11, 2014, which was nearly five years after the alleged removal occurred.

27 - OPINION AND ORDER

Plaintiff did not or in the exercise of reasonable diligence could not have known Defendants removed his property on October 20, 2009.  Plaintiff's claim of theft related to this removal, therefore, is untimely.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim related to the alleged theft of his property on October 20, 2009.

## VII. Seventh Claim:  Hearings Officer Gregory Frank

It is not entirely clear whether Plaintiff intends to assert a claim against Hearings Officer Gregory Frank.  Hearings Officer Frank's name appeared in the caption of Plaintiff's earlier Complaints, but Plaintiff's Second Amended Complaint and Statement of Facts of the Case do not contain any factual allegations related to Hearings Officer Frank or claims specifically directed at him.  At deposition defense counsel asked Plaintiff to identify his claim related to Hearings Officer Frank, and Plaintiff responded:  "Well, basically my claim in this whole process is that this process is fundamentally illegal."  Decl. of Jim Rice, Ex. 19 at 10.

Defendants assert to the extent that Plaintiff seeks to bring a claim against Hearings Officer Frank, he is entitled to absolute immunity for his role as Hearings Officer.  The Supreme Court has made clear that "judges of courts of superior or general jurisdiction are not liable to civil actions for their

judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (quotation omitted). The Court has extended the "doctrine of judicial immunity . . . [to] suits under . . . 42 U.S.C. § 1983." *Id.* (quotation omitted). In addition to judges, the Supreme Court has "recognized . . . some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993). Accordingly, courts have also extended absolute immunity to state officials who are not judges or prosecutors when the functions they perform are similar to those performed by judges or prosecutors. *See, e.g. Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004)("Under certain circumstances, absolute immunity is also extended to agency representatives performing functions analogous to those of a prosecutor or a judge. Such immunity assures the independent functioning of executive officials acting in a quasi-judicial capacity, thereby ensuring that they can exercise their adjudicative discretion without fear of intimidation or harassment."). Ultimately "[i]mmunity determinations . . . rest on 'the nature of the function performed, not the identity of the actor who performed it.'" *Cruz v. Kauai Cnty.*, 279 F.3d 1064,

1067 (9ᵗʰ Cir. 2002)(quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).  *See also KRL v. Moore*, 384 F.3d 1105, 1113 (9ᵗʰ Cir. 2004)(same).  Specifically, absolute immunity attaches only to tasks that "are 'functionally comparable' to tasks performed by judges" (*i.e.*, quasi-judicial actions taken in the "'official's adjudicatory role.'").  *Swift v. State of Cal.*, 384 F.3d 1184, 1189 (9ᵗʰ Cir. 2004).  *See also Mullis v. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1390 (9ᵗʰ Cir. 1987) (noting court clerks have absolute immunity "when they perform tasks that are an integral part of the judicial process.").

The record reflects the functions performed by Hearings Officer Frank are sufficiently similar to those performed by a judge.  For example, Hearings Officer Frank took evidence, reviewed the law, and issued an order containing conclusions as to jurisdiction and the merits of Plaintiff's appeal.  On this record, the Court concludes Hearings Officer Frank is entitled to absolute immunity to the extent that Plaintiff brings a claim against him related to Plaintiff's appeal of his arrest for criminal mischief because Hearings Officer Frank's tasks were functionally comparable to tasks performed by judges traditionally accorded absolute immunity.

Accordingly, the Court grants Defendants' Motion for Summary Judgment to the extent that Plaintiff brings a claim against Hearings Officer Frank.

## CONCLUSION

For these reasons, the Court **GRANTS the** Motion (#232) of Defendants City of Portland, Kurt Nelson, Gregory Frank, and Stuart Palmiter for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 30th day of November, 2015.

ANNA J. BROWN
United States District Judge